Thank you, Your Honor. Good morning to all of you. May it please the Court. My name is Jan Grieben. I represent Team Enterprises, LLC, who I'll refer to as Team today. Team is a – or has owned dry cleaners and is the subject of allegations in this case against it and also brought allegations and also was involved in the Hines case, as you probably noted. Now, as I understand it, the difference between the two cases, apart from the cross complaints and so forth, is that there is no HSAA appeal in this case and there is no RCRA claim in this case. Do I have that understood? Yes, Your Honor. We did not pursue a RCRA claim in this case. Right. Exactly. And we are – we do have a lot of overlapping issues concerning CERCLA and some of the state. Well, that struck me. That's why I asked the question. Yes, Your Honor. In this case, Judge Gould, to clarify, is this case procedurally on summary judgment rather than 12b-6? No, Your Honor. It's both. There was one issue that involved a motion for judgment on the pleadings, which is a 12b-6 standard, and then there was also a motion for summary judgment, and I'll address both. And street was the summary judgment, correct? That's correct, Your Honor. Mr. Graven, I want to start with the same question that I asked Mr. Stanzler. Under a plain reading of the statute, doesn't the arranger have to own or possess the hazardous substance? No, Your Honor, and I think that actually Burlington is where you start and end with that analysis with the litany of cases over time that Mr. Stanzler cited that have indicated that that is not a requirement. I think a fair reading of Burlington is that it has – it mandates a fact-intensive analysis in which what Your Honor has asked about is one of the questions that the court would eventually resolve or they try to fact. It's by no means an end-all. It's a factor, but it is not something that you start or end with in terms of a circle analysis. When you say that the try-or-fact would have to address it, I don't understand. Are you saying that that is a factor? Because if it is, you don't have any allegations here that either street or Multimatic owned or possessed the hazardous substance. Nor do I think that we have to, Your Honor, and that was our point. And that was based on Burlington. What in Burlington? Because Burlington was very different factually than this. What in Burlington are you relying on? What I'm relying on, Your Honor, is that Burlington has expansive language in it talking about the one type of arranger versus the type of entity that is not an arranger. And it says within those broad spectrums of who is an arranger and who is not, there is a factually intensive search that the court must or the try-or-fact must look for. The reason that I think Burlington is relevant was that the factual situation in Burlington involved a situation that did not involve intent. Clearly, the court made a determination that Shell, the alleged PRP in that case, was selling a product and was making extensive efforts to make sure that that product did not go into the environment. Because of accidents that would occur, which Shell tried to prevent, the court said, they weren't trying to arrange for anything. They were trying to prevent contamination. The issue here is that we have the exact opposite, where we have equipment companies selling equipment with manuals. They're the experts in the field. They're the ones who make this equipment, and it's used for only one purpose, Your Honor, which is there was a question earlier during the Heinz argument that this is sold without the chemical in it. Well, of course it's not sold with the chemical in it because it's sold to the dry cleaner, or it's sold in a manner where it will require the use of PCE. The machine does not operate without PCE. Does the same manufacturer also sell the chemical? With respect to RR Street, Your Honor, that entity serves as an agent for the sale of PCE with respect to dry cleaners. Did it make a sale in this case? You know, Your Honor, I'd have to go back and look at the record. It certainly has in other cases, and those facts are there in other cases. I haven't focused on the street issue in terms of agency liability, but they were the exclusive agents of a chemical company called Vulcan Materials Company for a number of years in which they served as the salespeople for sale of PCE. But you haven't alleged that in your complaint. I would have to go back specifically, Your Honor, but I don't recall that we did in this case because I don't think that we pursued that. And that goes to another issue. I'm going to go back one second, please, and then you can go on. Sure. To your reliance on Burlington and the intent issue. Burlington, the defendant there, Shell, did own or possess the substance. So I'm not sure what language you're relying on in Burlington to say that that is not a requirement because that's not something the Supreme Court even got into. I think that what I'm relying on, again, Your Honor, is the totality of the circumstances where I believe that the Court said you look at all of these factors and none of them are completely dispositive. I'm also relying on Ninth Circuit authority over the years, which says the same thing, that on a Circle Arranger case, one does not need to own the waste. As Mr. Stanzler alluded to, there's a lot of cases there that have not been overturned. They're Ninth Circuit law. I'm going to jump around a little bit because I had a full argument ready to go, but Mr. Stanzler has already stolen some of my thunder as well as the equipment. Counsel, while you're innovating here in your argument structure, let me just ask you, at some point could you comment on the extent to which the manufacturers, like, control or encourage what the cleaning company did, either through franchising or instructions or otherwise? Yes, Your Honor. They all did to some extent. There's different facts with respect to each of them. Cooper, who is not in this case but was in the Hines case, franchised their business so that you had to follow their requirements in terms of their franchise agreements. Cooper also issued instructions as to disposing of waste. And actually, in the Hines litigation, a diagram was put into the record as part of the pleading motions in which a Cooper representative was alleged to have actually laid out the how the dry cleaner was set up and where the waste was to go. Now, is that relevant in this case? It is not. It is in the Hines case, but I want to be completely responsive to the Court's question. No, I understand. With respect to RR Street, they were also in the stores. They had salespeople that would come by every two or three months. They had their manuals, which said specifically, go into the bucket. And let me address the bucket for a minute. We're hearing, or I think there was an inference there, that the bucket was some sort of alternative for the dry cleaner to dispose of waste. It's not. We put in unrebutted evidence with respect to the summary judgment motion that an executive vice president of Street, a gentleman by the name of Mr. Romanko, testified that there was no alternative to taking the contents of the bucket and putting it down the drain. That was an acceptable approach for Street. So what they really meant by putting waste into the bucket was to put it down the drain. There was no alternative. And in fact, I'll address that issue for a moment and then finish my answer to your question, Your Honor. The issue of what to do with the waste is an important issue, because the inference was that there were alternatives for the dry cleaner. The allegation from the dry cleaners and the evidence put into the record in the summary judgment was there were no alternatives, at least not during the period of time of relevance. The dry cleaners received instructions. They didn't know that those instructions would lead to contamination. They simply followed the instructions of what they considered to be the expert, in which they received a written manual saying put this stuff down the drain. As to Multimatic, you didn't have those allegations in your second amended complaint that was before the court. We had allegations, Your Honor, with respect to Multimatic that they had a manual that said ---- But not in the amended complaint that was before the court that the court ruled on. I think those were in the proposed third amended complaint, five years after you originally brought this lawsuit. Yeah. And let me clarify that, Your Honor. There's also an inference that this case had been zealously litigated against the equipment companies for five years. It had not. The equipment companies were recently brought into the case. Judge O'Neill's and the district court's rulings on the equipment companies were essentially the first time he ruled on these issues in this case. There was no leave to amend given. And in the response to the motions, we appropriately said we can plead a lot more. We weren't given that opportunity. Why isn't that something that was included in one of your prior amended pleadings, given that the instruction manual was clearly something your client had and that was within your control? Quite frankly, Your Honor, we had had other litigation with Multimatic and the other equipment companies, and those allegations had not been challenged. They had answered previous complaints in other matters. So as far as we were concerned, that was the status quo. They challenged it. We said we'll add more. The court said I'm not going to give you leave to amend because there's no basis. I don't think there's a basis that you can add the allegations. With respect to Hoyt, Your Honor, to answer your question, I'll defer to Mr. Stanzler because Hoyt is not part of my case, but I think he's already given you information with respect to that. I think the overriding issue here that all of these equipment companies have is that they're the ones who created this equipment. They're the ones who planned for how the disposal would occur. They're the ones who gave the instructions to the dry cleaners, and they never corrected those instructions, at least during the period of time that we're speaking of here. They simply said take this waste, take this pollution. They didn't call it pollution. They said it was waste, and throw it down the drain. Under those circumstances, and again, under the factually intensive analysis provided by Burlington, it would appear that this would be something that a trier of fact should consider, weigh the issues. These are serious issues, and as Mr. Stanzler said, we're troubled by the fact that the determination by the lower court is essentially a determination that the equipment companies have to be operators as opposed to arrangers. I am going to save three minutes of rebuttal, Your Honors. You may do so, Counsel. Eric Grant again for Defendant Appley, R.R. Street and Company. My colleague from Multimatic is going to take the last couple of minutes if it's necessary. I'd like to first begin with the record. I think there are some serious misremembering going on here. The operative complaint in the team case is the third amended complaint, and that was filed on May 5th of 2009. That appears in the excerpts of record, Volume 3, page 357. It was more than a year later, after the parties engaged in reciprocal discovery, that R.R. Street filed its motion for summary judgment. That was on June 16th, 2010. So the notion that the district court cut off this case at some premature point is fanciful. And were Street and Multimatic on the same discovery schedule? I am not certain, Your Honor, whether Multimatic and team engaged in discovery, but I would certainly say the team had the opportunity to do that. Multimatic was named in that third amended complaint in May of 2009, and whether or not team engaged in discovery was up to team. They're proposing amending their complaint against Multimatic, not against Street, since Street was at the summary judgment stage. Correct, Your Honor. There's no sought to leave to amend against Street. And certainly that would have been inappropriate given the timing, given the extensive summary judgment evidence that Judge O'Neill considered. And as to that evidence, I'd like to go first to what counsel characterized as unrebutted evidence about team's disposal options. As we address with particularity at page 16 of our answering brief and at footnote 5, basically what team put in front of the district judge was a five-word snippet of testimony taken 13 years ago in another case referring to general dry cleaning practice. In rebuttal, Street submitted to Judge O'Neill numerous pieces of testimony from team's own representatives about team's disposal options. And taking that evidence before it and expressly giving team the benefit of all the inferences, the district judge found that their team did have other disposal options. And that's on page 15, line 25 of volume 1 of the excerpts of record. I think it's page 14 of the judge's opinion. And I would like to also point out that although this court can review whether there was a genuine issue of material fact, with respect to one of those options, namely evaporation, team did not even raise that issue in its opening brief. And again, we point that out in footnote 5 on page 16 of our answering brief at great length. So the notion that there's unrebutted evidence is fanciful. Now to go more generally to control. Counsel, would you also address your opposing counsel's comment about the role of the bucket? He suggests that to use the reference to the bucket is to in effect order the disposal down the drain. The relevant instruction is on page 4 of volume 1 of the excerpts of record. And this is in 16916, the street appeal. At the top of the page, line 2, the district judge quotes the relevant instruction. And it is to a... This is in the judge's order? It is, Your Honor. Okay. I know we're dealing with multiple appeals. This is the, I believe, the higher number appeal, 16916, volume 1 of the excerpts of record, page 4. Again, quoting the relevant instructions from streets equipment. And that is to arrange the piping so that the wastewater may be caught in a pail or other suitable container. Now, again, the question is what do you do with the wastewater that's caught in the pail? And I've just discussed that with the court. Again, looking at all the summary judgment evidence, almost all of it out of the mouths of team's own representatives, and giving team the benefit of all doubts, the district judge found that there was no genuine issue of material fact. That with respect to that water collected in the bucket, team had disposal options other than putting it down the drain. And that's consistent with the allegation in the Hines complaint. There were other environmentally sound options. Counsel, is there a genuine issue of material fact, whether your client encouraged them to put the waste down the drain? No, Your Honor, there's not. And the reason is, again, the gravamen of the allegations. This is really a failure to warn case. The team's allegations are what Street did not do. Street did not tell us this. Street did not instruct us to do this. And so the district judge, after looking at all this evidence, found that there was no genuine issue of fact that Street neither planned for nor controlled disposal of the wastewater. And that's at page 15, line 23 of volume 1 of the excerpts of record. So, I mean, you heard Mr. Grieben talk about the fact that Street sales representatives came to the stores every two to three months. That's not evidence of control over disposal. There was no link of those visits to disposal of the wastewater in the bucket. We discussed this issue extensively on pages 15 through 19 of our answering brief. And I think if the court looks at the evidence, it will see there is no genuine issue of material fact. The district judge looked carefully and found that to be the case. And I think that ruling was indisputably correct. Is the useful product doctrine applicable here? The short answer is yes, Your Honor. And I guess the only qualification is that after the Supreme Court's decision in Burlington Northern, I think we need to talk about the useful product doctrine in its what I call unqualified form. This court's panel in Burlington Northern crafted an exception for disposal that occurs necessarily and immediately. But I think the essence of the Supreme Court's reversal, eight to one of that panel decision, was that that exception has gone away. And so what we have is the useful product doctrine in its unqualified form. And that is when a manufacturer like Street and Multimatic sell a useful product that's neither waste itself nor contains waste, but merely generates waste later that's disposed of by the operator-like team, that is not circular arranger liability. This court's case is the panel decision in Burlington, the ALCO products case, citing all the way back to I think it's the 3550 Stevens Boulevard case in 1990, has said under traditional arranger liability, direct arranger liability, those kind of parties like Street and Multimatic are just not liable as arrangers. But are they not liable because of a reading of the statute versus the useful product doctrine? Well, Your Honor, I think that certainly the useful product doctrine is a gloss on the statute. Is it a gloss or is it a defense? It seems to be discussed in the case law in terms of a defense. I think Your Honor's right that it's sometimes talked about as a defense. I think what it shows is that when the undisputed facts are, as in this case, that there's just been a sale of a product that generates waste down the road, that the plaintiff doesn't meet its prima facie case to show arranger liability under paragraph A3 of section 9607. Are you aware of any cases that have described the useful product doctrine like that? Because the ones that are cited in your briefs deal with the product where the product itself generates the hazardous waste on its own because it's internal to the product, like the battery. Right. Well, I think the short answer is those kinds of cases haven't been litigated because this Court made very clear in a series of opinions that that situation does not give rise to arranger liability. Certainly, that's been how the Court treated those undisputed facts, and that's what we have here. And I think the Supreme Court's decision in Burlington-Northern confirms that doctrine in its unqualified form. So I think I've addressed all the points. Counsel, I want to raise a question with respect to the nuisance issue. We have the city of Modesto case. Yes, Your Honor. How much does it take to establish assistance under Modesto, and to what extent is that applicable here? Well, Your Honor, I think all the parties agree that Modesto is the governing standard, and what it says is that only those who take affirmative steps. So I would submit respectfully that it's more than assistance. It's affirmative steps or instructions to dispose of waste improperly. And again, I think what the real complaint is here, and I'm quoting from Teem's opening brief, Street's representatives never instructed Teem to alter or cease disposal. Street, quote, never told Teem to stop certain practices. Those are the opposite of affirmative instructions. That's a failure to warn generic products liability claim. The city of Modesto opinion makes very clear that the law of nuisance does not go that far. And in fact, the court of appeal cautioned there that the law of nuisance should not swallow the law of products liability. And I think that's what the plaintiffs in both cases want. Did the Modesto case say that affirmative acts were essential, or just that that could be one way to establish assistance under the law? No, those are essential. That is what's required under the law. And the distinction is between affirmative acts and on the one hand, and those who place solvents in the stream of commerce without adequately warning of the dangers. So even with knowledge, and that's at pages 41 through 43 of the city of Modesto opinion, even with knowledge, even with a failure to warn, it may be products liability, and neither of the plaintiffs have brought a products liability claim here. But it's not nuisance. The court made that. Counsel, I have a question, if I may briefly, on Modesto. My understanding is it's an intermediate appellate decision, not state supreme court. So has the California supreme court declared definitively what are the standards for nuisance? It is an intermediate appellate court decision, Your Honor, and it is the law in California for situations of this kind. And I think it's the law because there are no other cases, no other appellate cases in California? There are no other appellate cases addressing this scenario, Your Honor, and I think if you look in the briefs of all parties on all sides of these, both cases look to city of Modesto as the governing standard, and nobody suggested otherwise. Thank you, Counsel. Thank you. We will hear now from Mr. Grieben, who has some reserved time. Thank you again, Your Honor. Addressing city of Modesto, since we're discussing that now, that is a case involving dry cleaner equipment. That case determined, in terms of the distinction that Mr. Grant just read from the record, that the equipment companies were responsible for nuisance. It was the chemical companies that manufactured the PCE that were not included as a responsible party under nuisance. So as far as we can see, there is no distinction between nuisance in our cases here and nuisance as interpreted by the city of Modesto case. Mr. Grant also left out an allegation in the team complaint, which was, in terms of street not advising, this is true, they did not. But the thing or the issue they didn't advise on was they didn't change their instruction that the only alternative or the only option with respect to disposal was down the drain. Well, with respect to the affirmative act portion, what is your argument that would meet that test? In terms of affirmative act, Your Honor, I'm not quite sure what you mean. Could you clarify? Well, you heard the discussion. Yes. And he suggests that it takes an affirmative act. Your Honor, the affirmative act is providing the instruction to the dry cleaner that says, here's what you're supposed to do with the waste. Which is pour it into a bucket in the case of one of the machines. Yes. And on that issue, Your Honor, the general dry cleaning practices that the street is attempting to use to distinguish that point, I don't understand that whether you're speaking of general dry cleaning practices or you're speaking of what happened here, what you're speaking of is that the executive vice president of street said, clearly in a deposition under penalty of perjury, the only option with respect to the bucket is down the drain, and that was an acceptable practice to street, no ifs, ands, or buts. Whether it was a small snippet or not, that's what Mr. Remarco said. With respect to the useful product, I think it's important to clarify what Burlington said about that issue, and I'm quoting from the decision at page 1878. The court says, quote, it is similarly clear that an entity could not be held liable as an arranger merely for selling a new and useful product if the purchaser of that product later, and unbeknownst to the seller, disposed of the product in a way that led to contamination, unbeknownst to the seller. What we have here is a company mandating an instruction, the only instruction, as to what to do with the waste generated by the design of their machine. Carry out this instruction or encourage this instruction, but there were no other alternatives provided. I would represent to this Court that based on the Burlington analysis of this issue, there is no useful product doctrine that is relevant to this case, and I think I'm out of time. Thank you, Your Honor. Thank you, counsel. The case just argued will be submitted for decision, and the Court would like to thank counsel on both sides for a very, very helpful argument, very well prepared and very, very much to the point.
judges: St. Eve, O'scannlain, Gould